May it please the Court, William P. Krause, Connell Foley, on behalf of Appellants Dominic Olson and Liberty Mutual Fire Insurance Company. This is an insurance dispute arising from the tragic death of Gary DeVircelli at a fraternity event at Rider University. Dominic Olson, a member of the fraternity, was sued for two counts, both claiming that he acted negligently in failing to provide medical attention or to assist Gary DeVircelli after his intoxication. We're here today because the Court below found that an exclusion in the policy for the national and local fraternity, Landmark, there's actually two parties I'll refer to it as Landmark, an exclusion barring coverage for bodily injury caused by hazing applied here. With no definition of hazing. But it doesn't say caused by. It says arising out of and then the exclusion is limited, I believe, to one who participates in or orders someone else to participate in. That's correct, Your Honor, directs or participates in hazing, which is an undefined term in the policy. That lack of definition was not quite as significant in the Court below in 2010 when the District Court compared the allegations of the complaint with that exclusion. Because the allegations themselves alleged hazing. It expanded a bit on that. It said hazing, including the compelled consumption of alcohol under circumstances amounting to legal duress. The ambiguity inherent in the lack of definition or the application of that exclusion for hazing was apparent before the Court below when the facts were presented. They were cross motions for summary judgment on a factual record. The facts are before this Court. And when you consider what actually took place as demonstrated by the facts, it's our position that Dominic Olson, under a fair reading of the term hazing within the meaning of the exclusion, and a reading consistent with the 2010 opinion as having this element of physical or mental abuse compelling someone to do something against their will, as opposed to a reading of the hazing exclusion that would bar coverage for bodily injuries for participating in a fraternity event where minors are served alcohol. Now let me ask you something, Mr. Krause. I noticed that you stressed requiring the consumption of alcohol without their consent. Is that the position that you are taking here? Because as I understand it, New Jersey has a statute that says the consent may not be used as a defense. Isn't that so? If I understand your honest question, there's no question there was underage drinking that took place at this and multiple other fraternity events. Yes. The fraternity was aware of that underage drinking. It took place when the ceremony concluded and the social aspect of this event took place, where both people legally able to consume alcohol and minors both drank alcohol. When I refer to the compelled consumption, I'm doing that in the context of trying to give meaning to the term, in our view, amorphous term, hazing, and seeking to apply it here with some core meaning that includes compelling someone, subjecting them to abuse of some fashion as opposed to a social event where, albeit minors are served alcohol, but they're not being compelled or forced or required in any way to consume that alcohol. Now where do you go with that argument? You have been talking about facts. There has been no trial. There have just been affidavits and depositions. What is the culmination of your argument with respect to the assertion that you have made that the hazing clause of landmark was ambiguous and that there were facts that should have been taken into effect by Judge Wolfson, who was the initial district court judge who had this matter? Where do you conclude? What do you want? We want the hazing exclusion applied narrowly here. I thought you said it was ambiguous. It is ambiguous and susceptible to two meanings, as set forth. Is an ambiguous insurance policy, let me correct that, an ambiguous clause in an insurance policy given effect? Or is there a burden that one of the other parties must bear? An ambiguous exclusion can be given effect. It's applied narrowly in favor of coverage. The landmark here, the proponent of the exclusion, has the burden of demonstrating facts bringing this case within the terms of that exclusion. Go ahead. Wouldn't the ambiguity here be, and that's where I thought you were going, wouldn't that be construed against landmark? This is landmark's policy, is that right? Correct, Your Honor. So when you say there's an ambiguity, and I'm not sure that Mr. Cavallone is going to view that, but if there's an ambiguity, why isn't that the beginning and the end of the inquiry, insofar as Mr. Olson is concerned? It is the beginning and the end. If this exclusion is found ambiguous and construed narrowly consistent with New Jersey insurance law, the facts demonstrating Dominic Olson's role in this event are not hazing, and he's covered under the policy. Except he was the pledge master. Correct. A term I never heard of before, thank goodness. I never had either. Isn't he responsible for the ceremony? And if the language is, as it says, arising out of hazing, isn't that enough? No matter how ambiguous and wherever hazing is, if he's responsible for the fraternity stuff that you have to go through to become a member of the hazing, as he's responsible for, he's in charge of it, how can it be that this injury under the policy did not arise out of the stuff that he was in charge of? The arising out of term of the exclusion would apply after we first settle on what the scope of hazing is within the meaning of the exclusion. In the first instance, the question is, did Dominic Olson, by the facts and the record, participate in or direct others to participate in excluded hazing? And we answer that question in the negative. The arising out of portion of the exclusion Your Honor is referring to goes to applying the exclusion after hazing is determined, after the exclusion applies because the fraternity member took place in hazing, and it then goes to exclude events arising out of the act of hazing, which here is applied would mean the subsequent events of Mr. DiVerselli getting terribly sick, the failure to address that state, the failure to get proper medical attention quickly enough. Would you repeat the first phase of that answer for me because I'd like to pick up on it. In answering, Judge McTee, you said there were two phases, and you were talking about the one before the arising out of it. I will, Your Honor. The first analysis in applying the exclusion is determining what hazing means to determine whether the exclusion applies to the facts at issue. That's where we contend that Dominic Olson did not participate or direct others to participate. Don't you need facts? There has been no trial as I understand it. The only statement about the effect of the hazing clause was made by Judge Wolfson, who determined that looking at the complaint and the allegations of the complaint, there was hazing. She determined that, did she not? She did. Judge Schiff, who inherited this case from Judge Wolfson, took that holding and applied the law of the case to it, did he not? He did not. And he did not take any facts. He did not find any facts. Indeed, his opinion is based wholly on what Judge Wolfson had determined that there was hazing. And you're talking about facts. Does that mean that you want a remand so that facts can be found by a district court judge as to whether there was hazing or not? I agree with Your Honor's characterization of what Judge Schiff did in terms of relying, referring to the opinion of Judge Wolfson from 2010. However, that 2010 decision was limited to a comparison of the allegations and the policy. Judge Schiff had a factual record before him. It was not the result of a trial. It was the result of facts gathered at Judge Wolfson's direction. She sent the parties back to participate in discovery, gather facts concerning what these individuals did during this event, and we came back to the court on cross motions for summary judgment with the facts available. We submit that the facts before Judge Schiff demonstrated that Dominic Olson did not participate in excluded hazing. I believe that factual record is sufficient, as this court reviews it de novo, to conclude that Dominic Olson did not participate in hazing, as we contend that term should be read. Now, I don't know what your time deadline is, because I don't have a red light. Go ahead. His red light is on. Go ahead. Proceeding to the second part of your analysis, though, there are no facts to tell us whether or not that your client was within the scope of his duty, which I understand is a part and parcel of the clause in the policy stating whether someone is covered or not. And it would seem to me that it's an important thing for a determination to be made as to whether an individual is covered. First thing under a policy, if you get hit by an automobile or for an automobile accident, and the insurance company is called, they want to know whether you're covered. Was your client covered? He was, and there are facts. But how can you tell that without any facts being determined? Respectfully, there are facts in the record in the form of the statement of the president of the local fraternity, Michael Torney, who said unequivocally that at that event, Dominic Olson, his pledge master, was responsible for the safety of the pledges, and he was there to make sure they didn't drink too much. And that's a reference at page 633 of the joint appendix. I apologize to the court. In my briefing, I believe I remarked or referred to it as 663 once or twice. It is six. If he's going to drink too much, and we're talking about an underage drinker, if he's there to make sure that the person doesn't drink too much, he's not there to prevent drinking, which is part of, again, this ritual or arises out of the ritual, why wouldn't that put him smack in the dab with the kind of activity that the insurance company is saying, we're not going to be on the hook for that. If that's what the fraternity wants to do, we're not picking up the tab for it. You can only accept Landmark's reading of its policy that it doesn't cover alcohol-related injuries or underage drinking if you view or read the hazing exclusion very expansively with reference to extrinsic things like decisions, the fraternity policy, the New Jersey criminal statute in connection with hazing. We submit that that is a demonstration in and of itself that the exclusion is unclear, that it's ambiguous. If you need to refer to extrinsic sources to define what's excluded. Your friend may be able to answer this a little bit better. I know he's got some time on the clock still, but it seems to me that this is kind of conceptually two issues. There's the duty to indemnify, which we've spoken a lot about, but there's also the duty to defend. Now, with respect to the duty to indemnify, it seems that, as Judge Garth pointed out, there was never any type of determination as to whether the two young men were insureds, but I think the analysis said we don't need to make that determination and whatever. But I'd like to, what about the duty to defend? You still don't have a determination as to whether they're insureds under the policy. And also, I mean, is there any decision at all in whether there's a duty to defend? There is not. Judge Wilson addressed the duty to defend on the earlier round of summary judgment. She compared the allegations of the complaint with the policy and ultimately determined that facts were required in addition to those allegations to determine the duty to defend. And we submit that that's consistent with New Jersey law. There is the Byrd v. Sussex mutual case, which permits a court under certain circumstances to, in effect, make the duty to defend coterminous or the same as the duty to indemnify. So you determine it by reference to the facts rather than just the allegations. Right. There was no ruling for Dominic Olson as to, yes, he is obligated or, yes, Landmark's obligated to defend Mr. Olson, or no, they're not. So how's this case over, then? We submit the record is, the factual record before the court on summary judgment is sufficient, looking at the facts to determine, one, he is uninsured under the Landmark policy, and, two, he did not engage in the excluded activity of hazing or directing others to dismiss. But do we have a decision, a final decision on duty to defend? And where is that, if so? We then return to Judge Shipp's ruling of 2013. He, in effect, ruled both on defense and indemnity by finding that the exclusion applied to bar coverage, meaning defense and indemnity, to Dominic Olson and co-appellants. Thank you. Thank you. May it please the Court, Garrett Chost representing Clinton, Maine and Farmers Insurance Company of Flemington. As a member of the Phi Kappa Tau fraternity, Clinton, Maine, was insured under the Landmark policy and entitled to insurance coverage unless Landmark could show that he engaged in hazing. And there is not as much evidence. Mr. Gross, were there any facts to determine that he was within the scope of his duty? See, I didn't find any finding in any opinion which said that he was within the scope of his duty. Did you? And if so, can you point it out to me? Your Honor, first of all, we take a little different tact than Mr. Crouse did. The allegations of the complaint allege that he was a member of the fraternity and that he was acting within the scope of his authority for the fraternity. And that satisfies the definition in the Landmark policy for an insured. Does it satisfy the Landmark clause, which says that an insured is someone who is working within the scope of their duty? Because I can't find a finding to that effect in the two judges' opinions. Can you point me to one? Again, Your Honor, we go by the allegations in the complaint, first of all, which specifically say he's a member of the fraternity and acting within the scope of his authority for the state and local fraternity. We're not deciding these things in the first instance. I think Judge Garth is asking, where is a finding by the district court that we can review? I think you're asking us to make that determination in the first instance. I'm sorry, Judge Garth, if I'm putting words in your mouth. I'm delighted that you picked that up, Judge, because that's precisely what I wanted to know. We placed before the court documents from Landmarks, not from Landmarks, from the fraternities, bylaws, purpose statements that showed that our client, and he did submit a certification to this affair, that he felt he was acting within the tenets of the fraternity to try to assist this young man who was intoxicated. And that's the only reason, really, that we're here today, is because my client tried to help this boy when he was brought to his room already intoxicated. And Landmark has not asserted anything to say that that's not the case, that he was not within the scope of his authority for the fraternity in helping Gary DiVerselli when he was intoxicated. The problem is that, as Mr. Becker has said, like nailing jelly to the wall. We're in a situation where usually the duty to defend arises from the four corners of the complaint, and that's it. But here, for reasons that I'm not quite sure I understand, the judge ordered discovery to be taken, and there's some New Jersey precedent for that. And it comes back to us after discovery, without, as has been said several times, any ruling or any finding of fact based upon that discovery as to what happened to trigger the duty to defend, let alone the duty to indemnify. It's very hard, at least for me, to get my arms around the case because of the relatively unique posture that it's in. We don't know for sure. It seems to me your argument's a little bit easier than the argument Mr. Krauss is making for Mr. Olson because at least Mr. Maine didn't have any official duty within the fraternity and within this hazing process, whereas Mr. Olson did. And usually it's ruled out he was within without the scope of that duty. And again, there's no finding on that. It's a summary judgment case, so maybe there shouldn't be. But maybe you can get a sense of what's troubling us, which is that at least I'm having trouble trying to take the fact that discovery was taken and then deciding this case under a body of law that says we look at the four bodies of the complaint, not going outside the complaint, inside a duty to defend. You're saying that the allegations in the complaint are not sufficient to bring Mr. Maine within the scope of the exclusion. But they did allege that he participated. They alleged he participated in the hazing. In and of itself, wouldn't that allegation be enough to trigger a duty to defend on the part of your client? No, Your Honor. First of all, we're not saying that the allegations were not sufficient. We did take an appeal as to that part of Judge Wolfson's opinion that said that you could not determine the duty to defend by the allegations of the complaint. Judge Wolfson specifically found that the allegations as to the individual defendants alleged hazing and or the aftermath of hazing. Now, she said that there's no allegations that definitively allege hazing. So what we have here are alternative allegations in the complaint. And you can see that by my client who, you know, took care of this boy when he was brought up to his room way after this celebration took place in a basement. And the boy later expired. Mr. Just, I'm going to interrupt you because I've got to go back to the beginning of this conflict. As I understand it, the policy, and I have it before me, and I also have Landmark's statement of policy on page 26 of the three. Landmark says that Olson and Main did not act within the scope of their duties to the National Fraternity. They were not insured. The policy says that someone has to work within the scope of their duties on behalf of the named insured. I want to know whether or not they have worked within the scope of their duties because if they did not, then they were not insured. And we are talking about whether or not Landmark is correct in saying that they did not work within the scope of their duties. Therefore, they were not insured. And if they're not insured, they're not covered. And if they're not covered, why are we here? Again, Your Honor, Bird versus Sussex Mutual says you compare the allegations and the complaint. No, no, no, no, no. They may say that and under the terms of the particular case. But I'm talking about whether or not the people that are involved here were insured. They could only be insured, as Judge McKeith and Judge Shigaris and I have pointed out, if they come within the policy. And the policy requires that they be working within the scope of their duties. And we can't get that from depositions or affidavits. Don't we have to get that from a hearing or from findings of fact? We review, as Judge Shigaris properly pointed out, we review findings of fact. I don't see any finding of fact that they were within the scope of their duties. Rather, I find a conflict because Landmark says they were. Now what? Landmark said that Maine was not within the scope of his duties because he was engaged in hazing. However, as I was saying before, Judge Wolfson said that there are other allegations in the complaint besides hazing allegations. I'm not talking about allegations. I'm talking about whether or not there was a finding in this case that the two individuals were insured. Can you point me to anything which determines that in the papers that we have before us? Nothing other than the allegations in the complaint as compared to the policy language. Thank you. Also, did either judge rule definitively on the duty to defend as opposed to duty to indemnify?  I would say no, Your Honor. And again, that was part of our appeal was that we said that the district court should have found that there was a duty to defend based on the allegations of the complaint as compared to the policy language. Judge Shigaris, anything further? I have nothing further unless there's any questions of the court. No, thank you. Good morning. May it please the court. Arthur Povilonis from Hardin, Conlin, McKeon, and Paleto on behalf of the Appellee's Landmark American Insurance Company and RZY Indemnity Company. Would you pronounce your name again? Would you pronounce your name again? Oh, I'm sorry. Povilonis. Thank you. I want to start with the last question that Judge Shigaris raised, which is do we have a ruling on duty to defend that's on appeal? And the answer is unequivocally that there is. In our notice of motion, which appears in A363 of the appendix, we make very clear that the relief that Landmark and RZY were requesting was a determination and declaration that there was no duty to reimburse any defense expenses incurred on behalf of including Mr. Olson and Mr. Main. And the reason why it's phrased as a reimbursement of defense expenses is because under New Jersey law, if an insurer declines to defend a case and if it's determined that they do, in fact, have a duty, then the obligation would be to reimburse the defense expenses. That doesn't answer our question directly. Can you tell us where the ruling is? Sure. Well, the ruling is the order granting the relief that we requested. Now, how we get there gets to, I think, what Judge McKee was talking about, which is this case has a bit of a different, a bit of a more extended exploration of what the factual allegations were than you might ordinarily expect to see in a duty to defend context. When Landmark moved in 2010 for summary judgment against, among others, again, Mr. Main, Mr. Olson, and their insurers, the facts that were presented to the district court at that time essentially was the pleading itself, the Dover Sully complaint. There, Mr. Main, I believe, put in an affidavit. There may have been one other piece of extrinsic evidence, but the only evidence of the factual allegations that were before the court at that point was the complaint, and the underlying action was ongoing. So in 2010, the district court ruled that the hazing exclusion in the policy was unambiguous, that it applied to the factual allegations that were being presented in the complaint, as far as it goes to the hazing, the compelled consumption of alcohol, that all of the defendants, including Mr. Main and Mr. Olson, were alleged to have caused, and therefore, under New Jersey law, for those allegations, if the plaintiffs could prove their allegations, if they could prove that they participated in that activity, that's not a covered event under the Landmark policy, and therefore, there would be no duty to defend. But what the district court struggled with was that there were additional allegations in the underlying complaint that talked about a failure to render medical assistance as well, and the district court questioned, well, what if the only allegation that ends up being raised against Mr. Main or Mr. Olson are medical assistance allegations and not being a part of the hazing that was alleged to have taken place? Under that circumstance, the court said, well, the hazing exclusion wouldn't apply, and therefore, there might be a duty to defend. So the district court in 2010, based on the pleadings, elected to deny everyone's motion and say, take discovery to see what facts beyond the pleadings have been developed in the underlying case that would shed further light on what the factual allegations that were being presented, not on what the ultimate facts were going to be. And the reason why I make that, that's a very important distinction in terms of the duty to defend, and the district court makes that clear because they talk about the SL Industries case of the New Jersey Supreme Court. And in the SL Industries case, the court found that you can look at, if there are facts developed beyond the four corners of the pleading that bear on a defense analysis, the court can look at those facts and determine whether or not those facts create a duty to defend that would not otherwise exist if you looked solely at the pleading itself. But only if, at least in SNL, only if SNL knew of those facts. I did not find SNL all that helpful because it seems to suggest that, I think it says as much, that you look at the four corners of the complaint and information that the insurance company had at the time it made its decision. Well, actually, it came about later than that. In SL, what happens is you have a complaint. The complaint alleges, I believe it was fraud and statutory violations. And the court recognized if you look at the complaint itself, those allegations, if proven, would not be covered under the policy. Therefore, there was no duty to defend based on the complaint itself. But what happened in SL is then later, after the complaint was filed, the plaintiff answered interrogatories that talked about a humiliation injury. And the court determined that that became an allegation that the plaintiffs were presenting, that they were alleged to be humiliated. And that, in that policy, was covered if it was proven. So at the point where the interrogatories were answered, bringing the humiliation claim into the case, at that point and that point only, a duty to defend arose with respect to that allegation and that allegation only. And so that's why the court was saying, well, you can't just look at the pleadings. If there are facts known to the insurer or anyone else, for that matter, beyond that are presented to the insurer that show a claim that, if proven, would be covered. And that's the inquiry that the district court in 2010 sent us back to look at, is look at the discovery in the underlying claim. I'd like to stop you at. Judge McKean, may I ask for a matter of procedure that we take a three-minute break?